1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DONNELL BLEDSOE,                              No.  2:18-cv-2710 KJM KJN P

12                        Plaintiff,

13         v.                                       ORDER AND

14    SGT. MARTINEZ, et al.,[1]                     FINDINGS & RECOMMENDATIONS

15                        Defendants.

16

17   I.  Introduction

18         Plaintiff is a former county jail inmate, proceeding pro se.  Defendant's motions to strike

19   and for summary judgment are before the court.  As set forth below, defendant's motion to strike

20   is denied, and it is recommended that defendant's motion for summary judgment be granted in

21   part and denied in part.

22   II.  Operative Pleading

23         This action proceeds on plaintiff's unverified second amended complaint, in which he

24   alleges:

25             On April 19, 2019, [plaintiff] filed a grievance against Sergeant
              Martinez . . . for planting evidence on [plaintiff] . . . causing plaintiff
26

27   _____

[1]  Although plaintiff identified the San Joaquin County Jail as a defendant, plaintiff included no
charging allegations as to the jail.  (ECF No. 12 at 1 n.1; see also ECF No. 24 (this action
28   proceeds solely on plaintiff's retaliation claim against defendant Martinez).)

1

1
2
3

> to receive 10 days extra in jail on a false claim. . . .  This was in retaliation for what [Martinez] called excessive grievances and [implicating Martinez] in a grievance [plaintiff] filed against Lt. Leatuge.

4
5
6

> After chow, [plaintiff] spoke with Sgt. Martinez about the grievance he handled on April 12, 2017.  [Martinez] informed [plaintiff] that [his] 4th level grievance had reached 4th level but Lt. Letuge [sic] was blocking (stopping) it. Sgt. Martinez confronted [plaintiff] about [his] grievance [implicating] him as my source of information and was very angry.

7   (ECF No. 11 at 2-3.)  About a week later, plaintiff alleges Martinez planted a fourth level

8   grievance on plaintiff causing plaintiff to be placed in administrative segregation, which added an

9   extra ten days to plaintiff's incarceration, and chilled plaintiff's First Amendment rights.  (ECF

10   No. 11 at 3.)  At the time, plaintiff was housed on the honor farm.  Plaintiff argues that such

11   action did not reasonably advance a legitimate correctional goal because it was based on Martinez

12   planting false evidence.  (ECF No. 11 at 4.)

13   III.  Defendant's Motion to Strike

14        On January 18, 2022, plaintiff filed a motion for summary judgment.  Defendant objected

15   and filed a motion to strike plaintiff's motion under Federal Rule of Civil Procedure 12(f).

16   Defendant contends the motion is untimely under the scheduling order which required all

17   dispositive motions to be filed on or before August 16, 2021.  (ECF No. 121)  Also, defendant

18   argues that plaintiff's third successive motion duplicates plaintiff's first and second failed

19   motions for summary judgment.  (ECF Nos. 120 & 153)  Defendant contends that the third

20   motion for summary judgment is immaterial and does not advance the case, is impertinent and

21   superfluous because it does not relate to the elements at issue herein and violates the July 18,

22   2019 order by renewing arguments concerning allegedly mishandled grievances.  (ECF No. 159

23   at 4.)

24        Plaintiff filed a response stating that his motion for summary judgment is his opposition to

25   defendant's motion for summary judgment.  (ECF No. 161 at 1.)  Defendant did not file a reply.

26        Rule 12(f) permits the court to "strike from a pleading an insufficient defense or any

27   redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis

28   added).  "Under the express language of [Rule 12(f)], only pleadings are subject to motions to

2

1  strike." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  Rule 7(a) limits

2  the definition of "pleadings" to complaints, third-party complaints, answers, and replies to

3  answers.  Fed. R. Civ. P. 7(a).

4     Because defendant seeks to strike plaintiff's motion, which is not a pleading under Rule

5  7(a), defendant's motion to strike is denied.  Based on plaintiff's response, the Clerk of the Court

6  is directed to modify the docket to reflect that plaintiff's January 8, 2022 motion shall be

7  docketed as plaintiff's opposition to defendant's motion.  (ECF No. 155.)  In addition, plaintiff's

8  filing ECF No. 157 shall be docketed as plaintiff's response to defendant's undisputed facts.

9     The substance of defendant's objection is considered in connection with the pending

10  motion for summary judgment.

11  IV.  Defendant's Motion for Summary Judgment

12     A.  Legal Standards for Summary Judgment

13     Summary judgment is appropriate when it is demonstrated that the standard set forth in

14  Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

15  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

16  judgment as a matter of law."  Fed. R. Civ. P. 56(a).[2]

17
18
19
20

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

21  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

22  56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

23  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

24  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

25  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory

26

27
28

---

[2]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1   Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

2   burden of production may rely on a showing that a party who does have the trial burden cannot

3   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

4   should be entered, after adequate time for discovery and upon motion, against a party who fails to

5   make a showing sufficient to establish the existence of an element essential to that party's case,

6   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

7   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

8   necessarily renders all other facts immaterial."  Id. at 323.

9        Consequently, if the moving party meets its initial responsibility, the burden then shifts to

10  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

11  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

12  establish the existence of such a factual dispute, the opposing party may not rely upon the

13  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

14  form of affidavits, and/or admissible discovery material in support of its contention that such a

15  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

16  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

17  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

18  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

19  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

20  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

21  (9th Cir. 1987).

22       In the endeavor to establish the existence of a factual dispute, the opposing party need not

23  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

24  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

25  trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

26  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

27  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

28  amendments).

4

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

By notice issued January 7, 2022 (ECF No. 154-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

B. Undisputed Facts[3]

1.  Plaintiff was an inmate at the San Joaquin County Jail from December 3, 2016, through June 3, 2017.[4]  (ECF No. 154-7 at 1 (Sgt. Williams' Decl.).

2.  Inmates housed at the San Joaquin County Jail Honor Farm ("JKL Barracks"), are housed in military style barracks in single beds with each inmate maintaining two unlocked metal drawers under his bed for storage of personal effects.  At the time of the incidents alleged herein, plaintiff was housed in the JKL Barracks.

---

[3] For purposes of summary judgment, the following facts are deemed undisputed unless otherwise indicated.

[4]  This time frame is six months.  In his declaration, plaintiff states he was an inmate at the San Joaquin County Jail for six months and ten extra days between 2016 and 2017, but he did not provide specific dates or evidence contradicting defendant's evidence that plaintiff served six months.  (ECF No. 155 at 4.)

1      3.  At all times relevant herein, defendant Martinez was a custody sergeant for the San

2 Joaquin County Sheriff's Department.  Martinez is now a lieutenant assigned as the San Joaquin

3 County Sheriff's Correctional Administrative Lieutenant.

4      4.  From 2012 to 2017, defendant Martinez's administrative duties as custody sergeant

5 included handling inmate grievances.[5]

6      5.  On February 15, 2017, plaintiff's work program appeal was denied by Work Programs

7 Sgt. W. Mitchell based on plaintiff's criminal history or current charges and public safety

8 concerns.  (ECF No. 158 at 22 (Pl.'s exhibits).)  Plaintiff was informed he would also be denied

9 for EMP ("Electronic Monitoring Program") due to his history.  (Id.)  Plaintiff "was denied AWP

10 placement because he did not fit the requirements for participation."  (ECF No. 154-5 at 2.)[6]

11      6.  Plaintiff testified that he was told that he was denied AWP because of his pending

12 charges.  (ECF No. 154-8 at 5-7 (Pl.'s Dep. 44; 49-50).)[7]

13      7.  Plaintiff testified he recalled filing 40-50 grievances while he was an inmate at the San

14 Joaquin County Jail, and plaintiff was familiar with how to complete a grievance form.  (ECF No.

15 154-8 at 8 (Pl.'s Dep. at 60).)

16

17 [5] Plaintiff's objection as to how defendant Martinez handled grievances does not refute that Martinez's duties included handling grievances.  Plaintiff's objection is overruled.

18
19 [6] Plaintiff's objection is overruled because the January 24, 2017 letter informed plaintiff that he "**MAY**" be eligible for AWP and was required to pay a non-refundable $75 administrative fee
20 before eligibility could be determined.  (ECF No. 158 at 24 (emphasis in original).)  Being eligible for a benefit is not the same as being granted the benefit.  In addition, the letter informed
21 plaintiff that the $75 fee was non-refundable, and he checked the confirmation box that stated he was interested in AWP and would have someone pay the non-refundable $75 Administration Fee
22 as soon as possible so that his eligibility can be determined.  (Id.)  After that printed statement, plaintiff handwrote that he wanted to pay the one-time administration fee of $75 with his debit
23 card.  (Id.)

24 [7] Plaintiff objected that "the lady handling deposition was biased," worked for defense counsel and "left a lot out."  (ECF No. 157 at 3.)  Plaintiff claims he inspected the deposition and found
25 out when defense counsel "told her to strike a lot of [plaintiff's] statements and she did."  (Id.) As evidence, plaintiff cites his own declaration, without a specific page cite.  (Id.)  However,
26 review of his 11-page declaration does not reveal any statements concerning his deposition or copies of testimony that was stricken.  (ECF No. 155.)  Finally, the deposition officer verified that
27 she was not connected with or related to any of the parties in this action or to their respective counsel.  (Pl.'s Dep. at 129.)  Plaintiff's objection is overruled.
28

8. On or about March 20, 2017, plaintiff prepared and allegedly submitted a grievance requesting fourth level review (hereafter "fourth level review grievance" or "Exhibit B") by custody captain because on March 15, 2017, plaintiff's fiancée was informed by Sgt. Mitchell AWP that plaintiff was denied for guards' reports." (ECF No. 154-8 at 24) (Deft.'s "Exhibit B").) Plaintiff objected that he had a right to face his accusers. Id. Plaintiff's grievance challenged the alleged improper denial of diversion to the county's "AWP Program" (Alternative Work Project Program).[8]

9. At his deposition, plaintiff authenticated his handwriting in the body of the inmate grievance form requesting fourth level review and identified by defendant as Exhibit B and bearing a "Donnell Bledsoe C" sticker from the deposition (ECF No. 154-8 at 24). (ECF No. 154-8 at 11 (Pl.'s Dep. at 67).)

10. Plaintiff submitted an inmate grievance claiming:

> It's been over two weeks since he requested his blue copies 2nd from Sgt. Mitchell that the lieutenant of AWP is holding. I filed a grievance on 3/21/17 to the lieutenant of AWP and he still refuses their return. It has been way over the 12 hour grace period and I'm requesting once again for their return.

(ECF No. 158 at 20.) Level 1 Housing Unit Officer T. Johnson forwarded the grievance to AWP (T. Tegue) on March 30, 2017. (Id.)

11. Plaintiff submitted a grievance stating it had been 15 business days since he submitted his fourth level grievance on AWP but had not yet received a response. (ECF No. 158 at 17.) Housing Unit Officer Roe forwarded the grievance to defendant Martinez, Duty Sgt., on April 12, 2017. (Id.)

12. On April 16, 2017, defendant Martinez investigated plaintiff's complaint that his fourth level grievance had been submitted and not addressed.[9] (ECF No. 154-5 at 2 (Martinez Decl.).)

---

[8] Plaintiff does not object to defendant's characterization of plaintiff's grievance; rather, he objects that AWP contacted plaintiff and said plaintiff was eligible for AWP, but after plaintiff mailed payment to AWP he was denied AWP. (ECF No. 157 at 3.)

[9] Plaintiff objects that the fourth level grievance was signed by officer Smith and torn out of pamphlet. (ECF No. 157 at 4.) But plaintiff's objection does not rebut this fact and is overruled.

13.  Plaintiff submitted a grievance claiming that on April 16, 2017, defendant Martinez came to plaintiff's bunk and opened a sealed legal envelope containing plaintiff's yellow copy of the March 20, 2017 grievance signed and forwarded on March 20, 2017, with badge number and time.  (ECF No. 158 at 18.)  Plaintiff claimed Martinez said that if plaintiff did not change the date Martinez would write plaintiff up.  Then Martinez produced his own white and blue copies stating plaintiff had them.  (Id.)  Plaintiff's grievance was dated April 19, 2017, by Level I - Housing Unit Officer Flores, who marked "unable to resolve at my level," and forwarded it to Sgt. White.  (ECF No. 158 at 18.)

14.  A first level grievance is an inmate grievance that is addressed at the corrections officer level.  A second level grievance is an inmate grievance that is addressed at the duty sergeant level.  A third level grievance is an inmate grievance that is addressed at the facility commander level.  A fourth level grievance is an inmate grievance that is reviewed by the custody captain.

15.  A San Joaquin County Jail inmate grievance form is a three-part form with multi-colored carbon pages.  The first page is white and is directed to the jail administrative staff for review and retention; the second page is blue and remains attached to the original (white page) until the investigating staff member issues a response and thereafter the blue page is sent back to the inmate for his/her retention; the third page is yellow and is kept by the inmate at the time of the grievance submission.  Defendant's Exhibit B (ECF No. 154-8 at 24) is an example of this form.

16.  The white page of the grievance form remains with jail administration until after correctional staff writes their response to the inmate on the form.  After the response is written, the blue page is returned to the inmate addressing their grievance.  The white page is then retained by the jail.

17.  The parties dispute what happened on April 16, 2017.  Defendant contends that as a result of correctional officer reports that plaintiff was complaining to corrections staff that he had submitted a fourth level grievance which had been disregarded, defendant investigated such complaint on April 16, 2017; plaintiff was present at the time of the search and was standing in

8

close proximity as defendant Martinez searched plaintiff's bunk.  (ECF No. 154-5 at 3.)  Plaintiff testified he was not present at the time of the search, but rather was in the office with other officers.[10]  (ECF No. 154-8 at 13 (Pl.'s Dep. at 80-81.)

18.  It is undisputed that as a result of plaintiff's accusation that defendant Martinez was singling him out for a bunk search, the entire "K barracks," containing about 48 bunks, was searched.  (ECF No. 154-5 at 3.)

19.  Defendant contends he found plaintiff's fourth level grievance in plaintiff's under-bunk storage drawers, it was completely intact and had not been submitted to corrections staff for action.  (ECF No. 154-8 at 3-4.)  Plaintiff maintains that the fourth level grievance was planted in plaintiff's property and that the face of the form demonstrates it had been submitted to Officer Smith.  (Pl.'s Dep. at 32, 36, 81.)

20.  Defendant Martinez issued plaintiff a rules violation for the following violations: possession of excessive clothing; loud/boisterous conduct; disorderly conduct; presentation of false testimony to staff; possession of contraband; and threats against staff.[11]  (ECF No. 154-8 at 26.)  Plaintiff testified that he was frustrated because he knew he had turned in the grievance, and admitted he yelled at Martinez.  (ECF No. 154-8 at 16 (Pl.'s Dep. at 89.)

21.  Defendant Martinez documented the violations in incident #17-10877.  (ECF No. 154-8 at 39-40 (Deft.'s Ex.  G).)

22.  Plaintiff was given a copy of the "San Joaquin County Sheriff's Office Custody Division - Rules Violation Form dated 4/16/17."  (ECF No. 154-8 at 26 (Deft.'s Ex. C).)

23.  Defendant Martinez issued a "pre-Hearing Segregation Order," finding that plaintiff's "continued presence in General Population poses a serious threat to life, property, staff, other

---

[10]  Plaintiff claims he was in the office with two other correctional officers behind closed doors about 30 yards away and the bunk was out of plaintiff's sight.  (ECF No. 157 at 7.)  Despite his citation to his own declaration, his declaration does not include such additional facts.  (ECF No. 155 at 4-11.)

[11]  Plaintiff testified the contraband was barbecue sauce.  (Pl.'s Dep. at 83-84, 94.)  Plaintiff admitted he had extra clothing and got loud after being confronted with the fourth level grievance, but he denied presenting false testimony to staff and denied threatening anyone.  (Pl.'s Dep. at 93-94.)

9

1   inmates or to the security of the facility because . . .  Inmate Bledsoe has been making false

2   accusations against Officers and Lieutenant pertaining to the grievance process and made threats

3   against staff when confronted."  (ECF No. 154-8 at 42 (Deft's Ex. H).)  Plaintiff was removed

4   from the Honor Farm and placed into the San Joaquin County Jail's administrative segregation

5   unit.

6       24.  On April 19, 2017, nonparty Sgt. S. Williams convened a disciplinary hearing and

7   affirmed the investigation and upheld the violations cited by defendant Martinez in Incident #17-

8   10877.[12]  (ECF No. 154-8 at 28 (Deft.'s Ex. D).)[13]

9       25.  As the Disciplinary Sergeant, S. Williams was the person responsible for preparing

10  Exhibit D and has personal knowledge of its contents.[14]  (ECF No. 154-7 at 3.)

11      26.  Prior to April 16, 2017, plaintiff properly submitted fifteen grievances all of which

12  received a response.  (ECF No. 154-7 at 4.)  Sgt. Williams has personal knowledge of this activity

13  as he is one of the custodial Sergeants retaining grievances.

14      27.  Plaintiff appealed the decision on incident #17-10877.  (ECF No. 154-8 at 29.)

15      28.  As the San Joaquin County Sheriff's Department's Correctional Administrative

16  Lieutenant, nonparty Lt. R. Teague was responsible for investigating plaintiff's appeal of incident

17  #17-10877.[15]

18  ////

19  _____

20  [12]  Plaintiff objects that the disciplinary hearing consisted only of Lt. Leatuge, and contends Lt. Leatuge did the disciplinary investigation.  (ECF No. 157 at 10, 13, 14.)  However, such statements are not verified and contrary to plaintiff's citation, are not addressed in plaintiff's declaration (ECF No. 155 at 4-11).  Moreover, the documentary evidence submitted by defendant reflects that Sgt. Williams conducted the hearing.  (ECF No. 154-8 at 28 (Deft.'s Ex. D).)  Plaintiff offers no competent evidence in rebuttal.

21

22

23  [13]  A more legible copy of this document is located at ECF No. 7 at 21.

24

25  [14]  As "Explanation of Significant Deciding Factors," Sgt. Williams first listed that a review of plaintiff's "record reveals 15 grievance submissions in 140 days.  It would appear as a result of this incident that many of his concerns have been pursued frivolously, predicated on lies and false accusations."  (ECF No. 154-8 at 28 (Deft.'s Ex. D).)

26

27  [15]  Plaintiff's objection as to how Lt. Teague investigated the issues (ECF No. 157 at 17) does not negate that Teague was tasked with such duty.

28

1    29.  Lt. Teague upheld the rules violation and determined plaintiff was appropriately

2    disciplined for violating San Joaquin County Jail rules.  (ECF No. 154-8 at 31 (Deft's Ex. E).)

3        C.  Standards Governing Retaliation Claims

4        "Prisoners have a First Amendment right to file grievances against prison officials and to

5    be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012)

6    (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  A viable retaliation claim in the

7    prison context has five elements:  "(1) An assertion that a state actor took some adverse action

8    against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

9    chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

10   advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir.

11   2005).  To prevail on a retaliation claim, a plaintiff may "assert an injury no more tangible than a

12   chilling effect on First Amendment rights."  Brodheim, 584 F.3d at 1269-70.  Furthermore, "a

13   plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather

14   that the adverse action at issue 'would chill or silence a person of ordinary firmness from future

15   First Amendment activities.'"  Id. at 1271 (citing Rhodes, 408 F.3d at 568-69).

16       D.  Discussion

17           1.  Exhaustion Not at Issue

18       In the summary of argument, defendant states there is no evidence that plaintiff exhausted

19   administrative remedies prior to filing his complaint.  (ECF No. 154-3 at 11.)  However,

20   defendant did not argue the issue of exhaustion in the body of his motion.  Therefore, the court

21   does not find that defendant moved for summary judgment on such grounds.

22           2.  Plaintiff's Opposition

23       In the motion to strike, defendant argues that plaintiff's motion, now construed as his

24   opposition, is a duplication of his first two failed motions for summary judgment, and does not

25   advance the case because it is immaterial and impertinent, consisting of statements that do not

26   pertain to the issues at hand.  (ECF No. 159 at 3-4.)

27       Plaintiff cannot meet his burden of raising a genuine dispute of material fact by simply

28   relying on conclusory allegations that are unsupported by factual data.  Matsushita, 475 U.S. at

1   587.  He must go beyond assertions and allegations and set forth specific facts by producing

2   competent evidence that shows a genuine dispute of material fact for trial.  Celotex Corp., 477

3   U.S. at 324.  Simply repeating vague allegations of his unverified pleading, without providing any

4   factual evidence to support it is insufficient to demonstrate a violation of rights.  See Far Out

5   Productions, Inc. v. Oskar, 247 F.3d 986 (9th Cir. 2001) (affidavits that did not present any

6   specific facts to support the claims were insufficient to preclude grant of summary judgment).

7   "The burden on the nonmoving party is not a heavy one; the nonmoving party simply is required

8   to show specific facts, as opposed to general allegations, that present a genuine issue worthy of

9   trial."  10A Wright, et. al., Federal Practice and Procedure § 2727.2 (4th ed. 2008).

10          While the district court is "not required to comb the record to find some reason to deny a

11   motion for summary judgment," Forsberg v. Pacific N.W. Bell Tel. Co., 840 F.2d 1409, 1418 (9th

12   Cir. 1988), the court may nevertheless exercise its discretion "in appropriate circumstances," to

13   consider materials in the record which are on file but not "specifically referred to."  Carmen v.

14   San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  However, the court need

15   not "examine the entire file for evidence establishing a genuine issue of fact, where the evidence

16   is not set forth in the opposing papers with adequate references so that it could be conveniently

17   found."  Id.

18          Here, defendants are correct that the substance of plaintiff's opposition fails to address

19   plaintiff's specific retaliation claims against defendant Martinez.  Rather, plaintiff claims that he

20   filed "over 17 unanswered or resolved grievances" that were not resolved in the proper amount of

21   time required by law.  (ECF No. 155 at 2.)  Plaintiff then claimed that "over 18 grievances were

22   never resolved or answered."  (ECF No. 155 at 3.)  But as plaintiff was previously informed in the

23   court's screening order, allegations that jail staff denied, or failed to timely address inmate

24   grievances, do not, standing alone, constitute a civil rights violation.  (ECF Nos. 6 at 4, 8 at 3-4.)

25   In the Ninth Circuit it is well-established that "inmates lack a separate constitutional entitlement

26   to a specific prison grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003);

27   Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Failure to respond to grievances fails to state

28   a cognizable civil rights claim as plaintiff does not have a liberty interest or a substantive right in

12

1    inmate appeals.  See Mann, 855 F.2d at 640 ("There is no legitimate claim of entitlement to a

2    grievance procedure.").

3          But more importantly, plaintiff's allegations in his opposition are not the current focus of

4    the instant lawsuit against defendant Martinez -- that plaintiff was falsely charged with a violation

5    in retaliation for excessive grievances and implicating defendant Martinez in a grievance plaintiff

6    filed against Lt. Leatuge.  (ECF No. 11 at 2.)  Thus, plaintiff wholly failed to address defendant's

7    arguments in the text of his opposition.

8          That said, appended to plaintiff's opposition is plaintiff's declaration (ECF No. 155 at 4-

9    11), as well as three supporting documents.  (ECF Nos. 156, 157, 158.)  Thus, the court addresses

10   such filings to the extent relevant to plaintiff's retaliation claim against defendant Martinez and if

11   supported by competent evidence.  Defendant is not prejudiced by such review because plaintiff's

12   position was made clear in his deposition, and it appears that defendant, whose job duties

13   included handling inmate grievances, was familiar with plaintiff's grievances.

14        3.  "Some Evidence"

15         Defendants first argue that because there is "some evidence" that plaintiff's change in

16   housing and loss of good time credits served a legitimate penological purpose of maintaining

17   prison discipline, plaintiff cannot prevail and his pleading should be dismissed.  (ECF No. 154-3

18   at 13-14.)  However, the Ninth Circuit has found that the "some evidence" rule does not apply to

19   a prisoner's First Amendment retaliation claim.  Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997).

20   Specifically, the court held that "where a prisoner alleges a correctional officer has falsely

21   accused him of violating a prison rule in retaliation for the prisoner's exercise of his constitutional

22   rights, the correctional officer's accusation is not entitled to the 'some evidence' standard of

23   review that we afford disciplinary administrative decisions."  Hines, 108 F.3d at 269.  Thus,

24   defendant's argument is unavailing.

25        4.  Alleged Protected Conduct:  April 19, 2017

26         Plaintiff's unverified claim that defendant Martinez retaliated against plaintiff for filing

27   the April 19, 2017 grievance against Martinez by issuing the rules violation is unavailing.  It is

28   undisputed that Martinez searched plaintiff's bunk area and issued the rules violation on April 16,

13

2017. (ECF No. 154-8 at 26.)  However, the grievance plaintiff wrote against Martinez is dated April 19, 2017, after the search took place.  Because plaintiff's grievance was written after the search plaintiff challenged in his grievance, defendant Martinez could not have been aware of the grievance and such protected activity could not have been the motivating factor for the April 16, 2017 search, or the alleged planting of false evidence.  See, e.g., Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) (rejecting theory that defendants acted in retaliation for inmate's interview with news channel, where the interview did not occur until three days after defendants' actions, and the interview was not broadcast until one month later).  Therefore, defendant Martinez should be granted summary judgment on this claim.

     5. Alleged Retaliation on April 16, 2017

          a. Adverse Action

It is undisputed that adverse action was taken against plaintiff by defendant Martinez. (ECF No. 154-8 at 26, 31.)  Defendant issued a rules violation against plaintiff resulting in his removal from the Honor Farm and being placed in administrative segregation for 10 days.

          b. Chilling

Defendant contends that there was no chilling of plaintiff's First Amendment rights because plaintiff's "appeals to both Sgt. Williams and Lt. Teague were fully and independently investigated." (ECF No. 154-3 at 16.)  However, plaintiff is not required to demonstrate a total chilling of his First Amendment rights in order to establish a retaliation claim.  See Rhodes, 408 F.3d at 568-69 (rejecting argument that inmate did not state a claim for relief because he had been able to file inmate grievances and a lawsuit).  The fact that a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough.  Id. at 569 (destruction of inmate's property and assaults on inmate enough to chill inmate's First Amendment rights and state retaliation claim, even if inmate filed grievances and a lawsuit).

          c. Retaliatory Motive

To create a genuine issue of material fact as to retaliatory motive, plaintiff must show that his litigation activities were a substantial or motivating factor for the adverse action.  See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  "[M]ere speculation that

14

1    defendants acted out of retaliation is not sufficient." Wood v. Yordy, 753 F.3d 899, 905 (9th Cir.

2    2014).

3          Plaintiff must first offer evidence that defendant knew of the protected activity. Packnett

4    v. Wingo, 2015 WL 1478597 at *12 (N.D. Cal. May 30, 2014) (citing Corales v. Bennett, 567

5    F.3d 554, 568 (9th Cir. 2009)).  Then, plaintiff must show either direct evidence of retaliatory

6    motive or at least one of three types of circumstantial evidence of that motive:  (1) evidence of

7    proximity in time between the protected act and the allegedly retaliatory decision; (2) evidence

8    that defendants expressed opposition to the speech; or (3) evidence that the defendant's stated

9    reason for the action was pretextual.  Corales, 567 F.3d at 568 (internal citation and emphasis

10   omitted); McCollum v. Cal. Dep't of Corrs. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011).

11                        i.  Knowledge of plaintiff's protected conduct

12         It is undisputed that defendant Martinez knew about plaintiff's protected conduct in filing

13   grievances.  Indeed, part of Martinez's job duties included handling inmate grievances, and it is

14   undisputed that he approached plaintiff on April 16, 2017, to investigate plaintiff's grievance

15   concerning the alleged lack of response to plaintiff's fourth level grievance.

16                        ii.  Circumstantial Evidence of Retaliatory Motive

17         Plaintiff's claim that he previously spoke with defendant Martinez "outside chow" on an

18   unidentified date prior to the April 16, 2017 search is not signed under penalty of perjury.  (ECF

19   No. 11.)  However, in his deposition, plaintiff testified as follows:

20              Because after chow one evening, me and Mr. Martinez, I asked about
                my fourth level grievance.  And he said that Lieutenant Leatuge was
21              holding up my grievance.  And I kept asking Martinez a couple more
                days what's up with my grievance.  In that case, Sergeant Martinez
22              got mad at me and -- one weekend when I was working off grounds
                at the Honor Farm, I came back and, all of my [sic] sudden, they just
23              wanted to search my bunk. . . .  And Sergeant Martinez put the
                grievance that Officer Smith signed and tore out of the pamphlet. . .
24              Sergeant Martinez brought out the grievance . . . that I had signed
                and Officer Smith had signed unattached from the grievance
25              brochure.  Like it already had been . . . turned in, but he went
                wherever it was at and got it and came back and stuffed it back in
26              there and put it in there.

27   (Pl.'s Dep. at 31-32.)  Regarding plaintiff's operative complaint in which plaintiff alleged he

28   spoke with defendant Martinez about the grievance Martinez handled on April 12, 2017, defense

                                                     15

counsel inquired about the subject matter of such grievance, and plaintiff responded: "We spoke after chow.  It was the fourth level grievance that . . was in Lieutenant Leatuge's possession. . . . It had been well over the days and I was wondering where that grievance was at . . ."  (Pl.'s Dep. at 51-52.)  When asked to explain what he meant in the paragraph stating, "Sgt. Martinez confronted me about my grievance implementing [sic] him as my source of information and was very angry," plaintiff responded:

> Well, when he told me that Sergeant Leatuge was blocking my fourth level grievance which I didn't receive in , , , a timely manner . . ., I questioned him about it and he said that Sergeant Leatuge was holding it well after the days that it was supposed to have a response. So I . . . filed that grievance.  It said that he was my source of information on Sergeant Leatuge holding up the grievance."

(Pl.'s Dep. at 56-57.)  Plaintiff explained that

> the fourth level grievance that [Martinez] put in my possession is the one that Sergeant Leatuge had in his possession withholding it well after the response time. . . .  So that grievance was already turned in. . . . that fourth level grievance that I had implemented [sic] Sergeant Martinez in telling me that Sergeant Leatuge was holding up, it was already turned in.  And so . . . that grievance right there, that was in Sergeant Leatuge's possession, sir.  It got back into my possession when I was at work.  That's why he retaliated because I told that he was my source.  The same grievance that Sergeant Leatuge was held up with got planted back in my possession after it was turned in.

(Pl.'s Dep. at 57-58.)  Plaintiff testified that after Martinez searched plaintiff's bunk, he came back with the signed grievance plaintiff had already turned in to Officer Smith.  (ECF No. 154-8 at 13 (Pl.'s Dep. at 81).)  In addition, in his declaration, plaintiff declares Sgt. Martinez planted the fourth level grievance torn out of the "pamphlet" and signed by Officer Smith and then brought false charges against plaintiff.  (ECF No. 155 at 7-8.)  Plaintiff's testimony is supported by the two grievances he submitted inquiring as to the status of his fourth level grievance.  (UDF 10, 11.)

Falsification of a report is deemed a retaliatory act in and of itself.  See Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (recognizing § 1983 retaliation claim where the prisoner alleged a correctional officer filed a false report in retaliation for the prisoner reporting officer misconduct); Hines, 108 F.3d at 269 (prison guard's false accusation of a prisoner's rule violation made after the prisoner used the grievance system deemed retaliatory).

16

Viewing the evidence in the light most favorable to plaintiff, he provides circumstantial evidence in the form of (1) the proximity in time between plaintiff's complaints to Martinez about the failure to respond to his fourth level grievance concerning AWP and the April 16, 2017 search; (2) his two other grievances inquiring as to the status of his fourth level grievance, which would not have been necessary if plaintiff had not yet submitted his fourth level grievance; and (3) his claim that defendant Martinez planted the fourth level grievance in plaintiff's personal belongings, which plaintiff contends is demonstrated by Officer Smith's handwriting on the form which demonstrates plaintiff had submitted the fourth level grievance, contrary to Martinez's claims.  If Officer Smith's handwriting on the form confirms that plaintiff submitted the grievance to Smith, arguably defendant Martinez would have been aware inasmuch as his work duties entailed handling inmate grievances.

However, defendant does not address the ink handwriting on the form which differs from the penciled handwriting authenticated by plaintiff.  And, despite Sgt. Williams' declaration, the court does not find that Exhibit B remains "attached."  While all three pages of the form are together, they are not attached.

Instead, defendant argues there is no evidence that plaintiff and Martinez had any contact prior to April 16, 2017.  (ECF No. 154-3 at 17.)  Indeed, defendant Martinez declares that he "never had any contact with [plaintiff] prior to [Martinez's] investigating [plaintiff's] grievance on April 16, 2017."  (Martinez Decl. at 5.)  However, in Martinez's incident report #17-10877, dated April 16, 2017, Martinez wrote that after showing the grievance Martinez was investigating, plaintiff became defensive and began to explain.  (ECF No. 154-8 at 39.)  Martinez then told plaintiff that Martinez "was already familiar with [plaintiff's] situation, *due to talking to him over the past several weeks about his complaints*."  (ECF No. 154-8 at 39) (emphasis added).  Thus, there is evidence of such prior contact, in Martinez's own words contained in his own report.  (Id.)  The discrepancy between Martinez's declaration and his own report also raises an inference of a retaliatory motive.

Martinez's words in his own report also suggest a temporal connection as well.  "Where an adverse action occurs shortly after the protected conduct, [the Ninth Circuit] has held that the

17

1    timing creates an inference of retaliatory motive." Slice v. Ferriter, 448 F. App'x 725, 726 (9th

2    Cir. 2011) (some citations omitted) (citing Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).)

3    A trier of fact may reasonably conclude that the timing of the April 16, 2017 investigation a few

4    weeks after such talks with plaintiff is circumstantial evidence of defendant's retaliatory motive.

5          In any event, the parties dispute what happened prior to April 16, 2017, as well as on

6    April 16, 2017, both prior to and during the search.  Neither party provided a declaration by

7    Officer Smith as to whether or not plaintiff had submitted the fourth level grievance.  Defendant

8    did not produce a declaration from officer T. Johnson who was present during the search and

9    could have offered testimony as to what Johnson did or did not witness during the search.  On the

10   other hand, plaintiff also did not provide a declaration from any witness setting forth what was

11   witnessed on April 16, 2017.  Neither party provided a declaration from the custody captain to

12   whom the grievance was to be forwarded on March 20, 2017, as to whether or not the captain had

13   received it.

14         All of the above disputes of material fact preclude entry of summary judgment.

15                     d.  Advancement of Legitimate Correctional Goal

16         Investigating a grievance is a legitimate correctional objective.  But doing so in a manner

17   intended to chill the inmate's filing of grievances is not.

18         It is well settled that prisons have a legitimate correctional interest in preserving the safety

19   of the institution.  Stefanow v. McFadden, 103 F.3d 1466, 1472 (9th Cir. 1996), superseded on

20   other grounds, Navajo Nation v. U.S. Forest Svc., 479 F.3d 1024 (9th Cir. 2007).  However,

21   "[p]rison officials may not defeat a retaliation claim on summary judgment simply by articulating

22   a general justification for a neutral process, when there is a genuine issue of material fact as to

23   whether the action was taken in retaliation for the exercise of a constitutional right."  Bruce, 351

24   F.3d at 1289 ("if . . . the defendants abused the gang validation procedure as a cover or ruse to

25   silence and punish [the inmate] because he filed grievances, they cannot assert that [his]

26   validation served a valid correctional purpose").

27         Defendant argues that nonparty Williams and nonparty Teague reviewed the investigation

28   and upheld the violations and plaintiff's placement in ad seg.  However, such officers were not

                                                    18

1    evaluating whether the charges were motivated by a desire to retaliate.  See Shepard v. Quillen,

2    840 F.3d 686, 692 (9th Cir. 2016) ("a prison official who uses a valid procedure as subterfuge to

3    obscure retaliation "cannot assert that [his action] served a valid penological purpose, even

4    though [the prisoner] may have arguably ended up where he belonged.")

5         Here, defendant focuses on what happened after the search, when plaintiff reacted to the

6    presentation of the fourth level grievance.  But if defendant Martinez used his role in

7    investigating inmate grievances to plant or use the fourth level grievance in retaliation for

8    plaintiff's grievance-filing, for example, to stop plaintiff from filing future grievances, or to

9    punish plaintiff for implicating Martinez in identifying Lt. Leatuge as the roadblock to plaintiff

10   receiving a decision on his fourth level grievance, such action would preclude Martinez's

11   assertion that the resulting violation and plaintiff's placement in ad seg served a valid correctional

12   purpose.  See Bruce, 351 F.3d at 1289.

13            d.  Conclusion

14        Because there are genuine material disputes of fact remaining, defendant is not entitled to

15   summary judgment on plaintiff's retaliation claim based on plaintiff's claim that defendant

16   Martinez retaliated against plaintiff on April 16, 2017.

17        6.  Qualified Immunity

18        Defendant contends he is entitled to qualified immunity.

19        The doctrine of qualified immunity shields government officials from civil damages

20   liability when performing discretionary functions as long as "their conduct does not violate

21   clearly established statutory or constitutional rights of which a reasonable person would have

22   known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S.

23   800, 819 (1982)).  Thus, government officials who "reasonably but mistakenly" conclude that

24   their actions are lawful will be shielded from suit.  Hunter v. Bryant, 502 U.S. 224, 227 (1991)

25   (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).  The general purpose of qualified

26   immunity is to allow government officials to "reasonably anticipate when their conduct may give

27   rise to liability for damages."  Davis v. Sherer, 468 U.S. 183, 195 (1984).  The qualified

28   immunity analysis has two prongs:  (1) whether the official violated the plaintiff's constitutional

1   rights; and (2) whether the right violated was clearly established at the time of the official's

2   conduct.  Pearson, 555 U.S. at 232.  Courts have the discretion to decide which prong to address

3   first, in light of the particular circumstances of each case.  Id. at 236.  In addressing qualified

4   immunity, the court must view the evidence in the light most favorable to the plaintiff and resolve

5   all material factual disputes in favor of the plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184

6   (9th Cir. 2003).

7         "[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth

8   Circuit, for qualified immunity purposes."  Pratt, 65 F.3d at 806 n.4 (citing Schroeder v.

9   Macdonald, 55 F.3d 454, 461 (9th Cir. 1995)).  This prohibition is because a prisoner's First

10  Amendment right to file prison grievances and to pursue civil rights litigation is a right "of

11  fundamental import."  Rhodes, 408 F.3d at 567; Bruce, 351 F.3d at 1288; Schroeder, 55 F.3d at

12  461; Quiroz v. Short, 85 F. Supp. 3d 1092, 1104 (N.D. Cal. 2015).  "[P]urely retaliatory actions

13  taken against a prisoner for having exercised those rights necessarily undermine those

14  protections."  Rhodes, 408 F.3d at 567.

15        Here, the relevant question becomes whether a reasonable prison official in defendant's

16  position would believe his alleged actions -- using his investigation of plaintiff's use of the

17  grievance process to punish a prisoner for exercising his First Amendment rights -- was lawful, in

18  light of clearly established law and the information defendant possessed.

19        Viewing the evidence in the light most favorable to plaintiff, defendant Martinez may

20  have acted with a retaliatory motive in response to plaintiff's filing of grievances.  Therefore,

21  resolution of the disputed factual issues discussed above is "critical to a proper determination of

22  [defendant's] entitlement to qualified immunity.  Glenn v. Wash. Cty., 673 F.3d 864, 870 & n.7

23  (9th Cir. 2011); see also Sloman v. Tadlock, 21 F.3d 1462, 1468 (9th Cir. 1994) (noting a jury

24  might be "best suited to determine the reasonableness of an officer's conduct in light of the

25  factual context in which it takes place").  Because there are material disputes of fact at issue,

26  defendant is not entitled to qualified immunity on plaintiff's April 16, 2017 retaliation claim at

27  this juncture.

28  ////

20

1    7. <u>False Imprisonment</u>

2         Defendant argues that plaintiff was disciplined and not falsely imprisoned.  (ECF No. 154-

3    3 at 17-18) (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 228 (1976) ("A prisoner's behavior may

4    precipitate a transfer; and absent such behavior, perhaps transfer would not take place at all.")

5    Defendant points out that plaintiff had a hearing on the charges of lying to offices and becoming

6    aggressive, and it was Sgt. Williams who investigated the charges and held the hearing.  In

7    addition, it is undisputed that plaintiff appealed Sgt. Williams' findings and Lt. Teague

8    determined that the sanction imposed on plaintiff was "appropriate for the gravity of the

9    incident."  (ECF No. 154-3 at 17-18, citing Deft.'s Ex. E.)  Plaintiff did not address this issue.

10        Initially, the court observes that in screening plaintiff's pleading, the undersigned did not

11   find that plaintiff stated a claim for false imprisonment.  But to the extent plaintiff attempts to do

12   so, such effort fails.

13        Under California law, false imprisonment is the "'unlawful violation of the personal

14   liberty of another.'"  <u>Martinez v. City of Los Angeles</u>, 141 F.3d 1373, 1379 (9th Cir. 1998)

15   (quoting <u>Asgari v. City of Los Angeles</u>, 15 Cal.4th 744, 757 (1997)).  "There are two bases for

16   claiming false imprisonment:  imprisonment pursuant to a false arrest and unreasonable delay in

17   bringing the arrested person before a judicial officer."  <u>Estate of Brooks v. United States</u>, 197

18   F.3d 1245, 1248 (9th Cir. 1999).  Plaintiff was a convicted inmate in the custody of the San

19   Joaquin County Jail and this action involves no claims to the contrary.  Plaintiff's placement in

20   administrative segregation does not give rise to a false imprisonment claim under California law.

21   Thus, to the extent plaintiff attempted to bring such a state law claim of false imprisonment, the

22   court recommends that this claim be dismissed with prejudice.[16]

23   8. <u>Plaintiff's Response to Lodging Exhibit B</u>

24        On July 14, 2022, plaintiff renewed his motion to inspect defendant's Exhibit B, which is

25   a three-page carbonized form, and claimed he had not received a copy of Exhibit B.  However,

26
_____

[16]  It is also undisputed that plaintiff served only six months in jail, which was the term agreed to
27   under his plea bargain, and which was less than the 364 days he was sentenced under the plea
     bargain.
28

1   the record reflects that plaintiff viewed this form during his deposition.  (ECF No. 154-8 at 9-11

2   (Pl.'s Dep. at 66-67).)  In his response, plaintiff confirms that the form "was detached when last

3   inspected by the plaintiff" (ECF No. 165), suggesting he has previously viewed the form.

4   Moreover, defendant provided a proof of service confirming that on January 7, 2022, the exhibits

5   were served on plaintiff along with the motion for summary judgment and supporting

6   declarations.  (ECF No. 154-9.)  Finally, as set forth above, the court agrees with plaintiff that the

7   form is no longer attached.[17]  Therefore, no further inspection is required.

8   V.  Orders and Recommendations

9           Accordingly, IT IS HEREBY ORDERED that:

10          1.  Defendant's motion to strike (ECF No. 159) is denied;

11          2.  The Clerk of the Court is directed to modify the docket to reflect that plaintiff's

12   January 8, 2022 motion (ECF No. 155) shall be docketed as "plaintiff's opposition to defendant's

13   motion for summary judgment (ECF No. 154)"; and plaintiff's filing ECF No. 157 shall be

14   docketed as "plaintiff's response to defendant's undisputed facts"; and

15          3.  Plaintiff's motion to inspect Exhibit B (ECF No. 165) is denied.

16          Further, IT IS RECOMMENDED that defendant's motion for summary judgment (ECF

17   No. 154) be partially granted as follows:

18          1.  Defendant Martinez should be granted summary judgment on plaintiff's claim that

19   defendant Martinez retaliated against plaintiff for filing a grievance against Martinez on April 19,

20   2017, and on plaintiff's putative false imprisonment claim; such claims should be dismissed with

21   prejudice;

22          2.  Defendant Martinez's motion should be denied as to plaintiff's claim that defendant

23   Martinez retaliated against plaintiff on April 16, 2017; and

24          3.  This matter should be remanded to the undersigned for further proceedings.

25          These findings and recommendations are submitted to the United States District Judge

26   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

27

28   ────────────────
[17]  Although plaintiff claims that there was a page "torn out," the form is not perforated, and none of the three pages have tearing marks on top.  (Exhibit B.)

22

1  after being served with these findings and recommendations, any party may file written

2  objections with the court and serve a copy on all parties.  Such a document should be captioned

3  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

4  objections shall be filed and served within fourteen days after service of the objections.  The

5  parties are advised that failure to file objections within the specified time may waive the right to

6  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

7  Dated:  July 27, 2022

8

9

10  /bled2710.mts.msj

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

23